UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ANESSA LEWIS,                                    :
                                                 :
        Plaintiff,                               :
                                                 :
        v.                                       :        Case No. 1:14-cv-205-jgm
                                                 :
BELLOWS FALLS CONGREGATION OF                    :
JEHOVAH'S WITNESSES, BELLOWS                      :
FALLS, VERMONT, INC.; WATCHTOWER                 :
BIBLE AND TRACT SOCIETY OF NEW                   :
YORK, INC.; and NORTON TRUE,                     :
                                                 :
        Defendants.                              :
_____ :

MEMORANDUM AND ORDER ON MOTIONS TO DISMISS AND FOR A MORE
DEFINITE STATEMENT
(Docs. 11, 12)

I.      Introduction

        Plaintiff Anessa Lewis alleges Norton True, a Ministerial Servant of the Jehovah's Witness

Church, sexually abused her when she was a child.  She brings claims against True, the Bellows Falls

Congregation of Jehovah's Witnesses, Bellows Falls, Vermont, Inc., and the Watchtower Bible and

Tract Society of New York, Inc. for breach of fiduciary duty (Count I), negligence (Count II),

ratification (Count III), and fraud by omission/concealment (Count IV).  Defendants filed motions

to dismiss and for a more definite statement.  (Docs. 11, 12.)  The motions for a more definite

statement seek information relevant to statute of limitations defenses.  Lewis opposed the motions

to dismiss (Doc. 13), and Defendants Bellows Falls Congregation of Jehovah's Witnesses, Bellows

Falls, Vermont, Inc. and Watchtower Bible and Tract Society of New York, Inc. filed a reply (Doc.

14).  Defendant True did not file a reply.

II.    <u>Background</u>

      The following facts alleged in the Complaint are assumed to be true for purposes of the pending motions.  Defendant Watchtower Bible and Tract Society of New York, Inc. ("Watchtower") is the head of the Jehovah's Witness Church.  (Doc. 1 (Compl.) ¶ 12.)  Among other forms of control over the Church, Watchtower reviews and approves or rejects recommendations of Ministerial Servants.  (<u>Id.</u> ¶¶ 16, 20.)  Watchtower also establishes disciplinary processes for church members accused of wrongdoing.  (<u>Id.</u> ¶ 17.)  Defendant Bellows Falls Congregation of Jehovah's Witnesses, Bellows Falls, Vermont, Inc. (the "Congregation" or "Bellows Falls Congregation") has its principal place of business in Windham County, Vermont and was responsible for Jehovah's Witness Church operations in some portions of Windham County at the time of the alleged conduct.  (<u>Id.</u> ¶¶ 5-6.)

      Plaintiff Anessa Lewis was raised in a Jehovah's Witness family.  (<u>Id.</u> ¶ 47.)  She was associated with the Congregation from birth until after the alleged sexual abuse.  (<u>Id.</u>)  Defendant Norton True was a Ministerial Servant at the Bellows Falls Congregation at the time of the alleged sexual abuse.  (<u>Id.</u> ¶¶ 9, 59.)

      Before Lewis's fifth birthday, True babysat her at his home.  (<u>Id.</u> ¶ 49.)  Lewis alleges True lifted her up so she could see horses in a stall in his barn, and he placed his hands under her underwear and touched her genitals.  (<u>Id.</u>)  Lewis alleges True molested her on multiple occasions. (<u>Id.</u> ¶ 50.)  Lewis alleges her mother learned of True's actions when she noticed him attempting to isolate Lewis's sister, Miranda Lewis, in his barn.  (<u>Id.</u> ¶ 51.)  Lewis's mother took Lewis and Miranda to her car, and True followed them.  (<u>Id.</u>)  When Miranda asked when True was going to touch her again (<u>Id.</u> ¶ 52), True denied touching her (<u>Id.</u> ¶ 53).  Lewis stated she believed her sister because True had touched her as well.  (<u>Id.</u> ¶ 54.)

Lewis's mother reported True's conduct to the Bellows Falls Congregation (Id. ¶ 55), which took no action against True (Id. ¶ 56), issued no warnings to Congregation members (Id. ¶ 57), and did not report abuse to any child protective agency or police agency (Id. ¶ 58).  On information and belief, Lewis alleges True abused at least three other minors before abusing her (Id. ¶ 61), one of those minors reported the abuse to the Bellows Falls Congregation (Id. ¶ 62), and the Congregation took no action (Id. ¶ 63).

III.     Discussion

A.     Standard of Review

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor.  See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993).  A complaint should not be dismissed on the pleadings unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006) (citation omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679 (citing Twombly, 550 U.S. at 556).

B.     Breach of Fiduciary Duty (Count I)

Lewis alleges Bellows Falls Congregation and Watchtower entered into a fiduciary relationship with her by "permitting Defendant True to hold himself out as a Ministerial Servant of the Jehovah's Witness Church."  (Compl. ¶ 69.)  She argues Bellows Falls Congregation and

Watchtower breached this fiduciary duty by "choosing not to prevent Defendant True from engaging in the wrongful conduct described [in the Complaint]."  (Id. ¶ 70.)

Bellows Falls Congregation and Watchtower argue no fiduciary relationship existed between Lewis and the Jehovah's Witness Church.  (Doc. 11, at 6.)  Under Vermont law, a fiduciary relationship exists "when one person is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation."  Knelman v. Middlebury Coll., 570 F. App'x 66, 68 (2d Cir. 2014) (citing Handverger v. City of Winooski, 191 Vt. 84, 38 A.3d 1158, 1161 (2011)); see also McGee v. Vt. Fed. Bank, FSB, 169 Vt. 529, 726 A.2d 42, 44 (1999) (a fiduciary relationship exists where a principal is "dependent upon, and reposed trust and confidence in" the fiduciary).  "It is unclear whether a cause of action for breach of fiduciary duty between a church and its congregants exists in Vermont."  Doe v. Newbury Bible Church, No. 1:03-cv-211, 2005 WL 1862118, at *5 (D. Vt. July 20, 2005), report & recommendation adopted, No. 1:03-cv-211, 2005 WL 1962260 (D. Vt. Aug. 15, 2005), aff'd 509 F.3d 69 (2d Cir. 2007).

In Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 196 F.3d 409 (2d Cir. 1999), however, the Second Circuit concluded a jury could have found a fiduciary duty between a church and a particular congregant existed under Connecticut law.  See id. at 430.  A fiduciary relationship can only be inferred from a specific relationship between a fiduciary and the principal, not from a principal's general status as a member of a church.  See id. ("It is reasonable for the jury to conclude that [plaintiff], through the particular activities in which he was involved, including those which the Diocese sponsored, had a particularly close relationship with the Diocese from which a fiduciary duty might arise.").  Thus, Lewis cannot argue the general hierarchy of the Jehovah's Witness Church created any fiduciary duty.

Lewis can, however, argue the specific facts of her relationship with the Bellows Falls Congregation gave rise to a fiduciary duty. See, e.g., Martinelli, 196 F.3d at 430 (a reasonable jury could find a fiduciary duty when plaintiff attended a diocesan school and was taught by priests employed by the Diocese; plaintiff participated in a small group of boys to whom the alleged abuser was a mentor; the alleged abuser spent more time with plaintiff than other similarly situated boys; "[t]hese contacts were well known" in the school and Diocesan communities; the Diocese encouraged the alleged abuser to spend time with youths; and the Diocese allowed the alleged abuser to take groups on church field trips); Doe v. Norwich Roman Catholic Diocesan Corp., 309 F. Supp. 2d 247, 252 (D. Conn. 2004) (inferring a "unique situation" giving rise to a fiduciary duty when plaintiff alleged he participated in church-sponsored activities and the church chorus with defendant's encouragement; he consulted his alleged abuser for spiritual and religious counseling with the defendant's encouragement; and he had family dinners with his alleged abuser).

Bellows Falls Congregation and Watchtower argue Lewis has not adequately pleaded any special or unique relationship between herself and the Congregation to establish a fiduciary duty. Lewis asserts she can, by amending the Complaint, show a fiduciary relationship based on Martinelli, 196 F.3d 409, and asserts she will move for leave to amend the Complaint. (Doc. 13, at 26.) To state a claim for breach of fiduciary duty upon amendment, Lewis must plead facts supporting (1) the "particulars of [her] ties" to True and the Congregation, and (2) the Congregation's "knowledge and sponsorship of that relationship." Martinelli, 196 F.3d at 429. At this time, Lewis's claim for breach of fiduciary is dismissed without prejudice.

C.     Negligence (Count II)

A church may not be held liable for the torts of its agents under a respondeat superior theory. See Doe v. Newbury Bible Church, 182 Vt. 174, ¶ 13, 933 A.2d 196, 200 (2007) (a church

may not be held vicariously liable for the torts of a pastor "without any regard to fault"); see also Doe v. Norwich Roman Catholic Diocesan Corp., 268 F. Supp. 2d 139, 142 (D. Conn. 2003) ("In most cases of alleged sexual abuse by priests, the courts have held that respondeat superior is not applicable to hold a church or diocese liable, because such acts are not in furtherance of the church's business."). A church can, however, be held directly liable for damages resulting from its negligence. See Knelman v. Middlebury Coll., 898 F. Supp. 2d 697, 728 (D. Vt. 2012) (citing Brueckner v. Norwich Univ., 169 Vt. 118, 730 A.2d 1086, 1093 (1999)) (holding a principal may be directly liable for damages resulting from negligent supervision of its agents' activities).

To hold a defendant liable for negligence, a plaintiff must establish the defendant owed her a particular duty of care, it breached that duty of care, and the breach harmed the plaintiff. See Turner v. Roman Catholic Diocese of Burlington, Vermont, 2009 VT 101, ¶ 32, 897 A.2d 960, 974 (2009).

Lewis alleges the Congregation and Watchtower had duties to supervise True (Compl. ¶ 78), to control True (Id. ¶ 74), to protect Lewis from True (Id. ¶ 72), and to warn Lewis of True's vicious propensities (Id. ¶ 78). Lewis claims Bellows Falls Congregation and Watchtower breached these duties of care by allowing True to have unsupervised contact with Lewis, by failing to supervise True, by choosing not investigate True, and by concealing information about True's vicious propensities from Lewis's parents, among other things. (Id. ¶ 81.) The Congregation and Watchtower argue they did not owe a duty to Lewis and therefore as a matter of law cannot be liable for negligence. See Kennedy v. Roman Catholic Diocese of Burlington, Vermont, Inc., 921 F. Supp. 231, 234 (D. Vt. 1996) ("[T]o recover in a negligence action, a plaintiff must establish the existence of a legally-cognizable duty on the part of the defendant.").

6

1.    <u>Duty to Supervise True</u>

Lewis alleges "Bellows Falls Congregation and Watchtower had a duty to provide reasonable supervision of Defendant True." (Compl. ¶ 78.) Lewis couches this claim as an assertion Bellows Falls Congregation and Watchtower employed an "improper person . . . in work involving risk of harm to others." Restatement (Second) of Agency § 213(b).

In Vermont, a claim of negligent supervision is based on the Restatement (Second) of Agency § 213. <u>See</u> <u>Haverly v. Kaytec, Inc.</u>, 169 Vt. 350, 357, 738 A.2d 86, 91 (1999); <u>Brueckner</u>, 169 Vt. at 126, 730 A.2d at 1093. Accordingly,

> A person conducting an activity through servants or agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: (a) in giving improper or ambiguous orders of [sic] in failing to make proper regulations; (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others: [sic] (c) in the supervision of the activity; or (d) in permitting or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958). For the principal to be held liable, the harm must have been foreseeable. <u>See</u> <u>Doe v. Norwich Roman Catholic Diocesan Corp.</u>, 268 F. Supp. 2d at 146 ("In cases regarding the liability of religious organizations for negligent supervision of their clergy, the courts have held that in order for a duty to have existed, the organizations must have known or should have known that misconduct was occurring.").

The Congregation and Watchtower cite decisions applying New York law for the proposition that "the vast weight of authority establishes a premises element to negligent supervision and retention claims." <u>Doe v. Alsaud</u>, 12 F. Supp. 3d 674, 683 (S.D.N.Y. 2014) (citations omitted); <u>see also</u> <u>Ehrens v. Lutheran Church</u>, 385 F.3d 232, 235 (2d Cir. 2004) (third element of a negligent supervision claim in New York is "that the tort must have been committed

on the employer's premises or with the employer's chattels").  The Vermont Supreme Court,

however, has adopted the Restatement (Second) of Agency § 213, which does not expressly include

a premises element as part of the common law tort of negligent supervision.  See Haverly, 169 Vt. at

357 (adopting Restatement (Second) of Agency § 213 as the tort of negligent supervision); see also

Knelman, 898 F. Supp. 2d at 728 (same).  Restatement § 213 provides in plain language for a tort for

negligent "employment of improper persons . . . in work involving risk of harm to others."

Restatement (Second) of Agency § 213.  Comment d to the Restatement (Second) of Agency § 213

offers a further gloss, explaining a principal is liable for employing "a vicious person to do an act

which necessarily brings him in contact with others while in the performance of a duty."

Restatement (Second) of Agency § 213, comment d.

Lewis alleges the Congregation became aware True had molested a minor (Compl. ¶¶ 21, 38,

62), continued to employ True as a Ministerial Servant despite his history (Id. ¶ 66), and as a

Ministerial servant True posed a risk of harm to Lewis and other children (Id. ¶¶ 30, 31, 59, 60).  If

True connected with Lewis and her family through his position at the Congregation as a Ministerial

Servant and the Congregation was forewarned of the danger True posed, the Congregation may

have had a duty to supervise True.  This is sufficient to state a claim for negligent supervision.

2.     Duty to Control True

Whether the Congregation had a duty to control True depends on whether the Congregation

had a "special relationship" with True.  "Generally, there is no duty to control the conduct of

another to protect a third person from harm. An exception to this rule may arise where there is a

special relationship between two persons which gives one control over the actions of another."

Kennedy, 921 F. Supp. at 234.  A "special relationship" can arise "where an off-duty employee's

negligent acts occurred on the master's premises or while using his chattels" or "where the employer

voluntarily and knowingly assumes a duty of control." Poplaski v. Lamphere, 152 Vt. 251, 257-58, 565 A.2d 1326, 1330 (1989) (citing Restatement (Second) of Torts § 317 (1965)).

Lewis alleges True molested her on his personal property, not on property belonging to the Congregation or Watchtower.[1] (Compl. ¶ 49.) Lewis argues the Congregation had a duty to protect her from True because it was aware of True's prior abuse of minor congregants. (Compl. ¶ 62.) Under the plain language of § 317, however, mere foreseeability is insufficient to establish a duty to control if the servant is not on the master's premises or using a chattel of the master. See Restatement (Second) of Torts § 317; see also, e.g., R.A. ex rel. N.A. v. First Church of Christ, 748 A.2d 692, 699 (Pa. Super. Ct. 2000) (finding Restatement (Second) Torts § 317 could not give rise to liability on the part of a church for sexual abuse of a priest in his private home, even when "occasional private religious meetings" were held there, because the church did not own the premises).

There is no "special relationship" between the Congregation and True giving rise to a duty when he is not on the Congregation's premises or carrying out the Congregation's business, and therefore the Congregation had no duty to control True when he was babysitting a child outside Congregation activities. Accordingly, to the extent Lewis's negligence claim depends on the existence of a duty to control, that claim is dismissed.

        3.    Duty to Protect Lewis

Whether the Congregation had a duty to protect Lewis depends on whether the Congregation had a "special relationship" with Lewis. Under the Restatement (Second) of Torts § 314A (1965), "special relationships" giving rise to a duty to aid or protect individuals from the

---

[1] Lewis also alleges a going away party for a family departing the Congregation was held at True's home at one time, but this allegation on its own does not establish the Congregation controlled True at his home. (Id. ¶ 51.)

criminal acts of others "are those of common carrier/passenger, innkeeper/guest, landowner/invitee and one who is required by law to take or who voluntarily takes custody of another under circumstances such as to deprive the other of his normal opportunities for protection." Berry v. Watchtower Bible & Tract Soc. of New York, Inc., 152 N.H. 407, 412-13, 879 A.2d 1124, 1129 (2005). The Vermont Supreme Court has also found a "special relationship" establishing a duty to protect can arise in a non-custodial setting when an organization charged by statute to protect a particular class of persons receives notice of danger to a "specifically identified" individual. See Sabia v. State, 164 Vt. 293, 305-06, 669 A.2d 1187, 1195-96 (1995) (finding the Department of Social and Rehabilitation Services had a duty to protect children from subsequent sexual abuse by their stepfather after receiving notice of sexual abuse). In that case, the Vermont Supreme Court relied on Restatement (Second) of Torts § 324, which provides a duty is established when an actor "takes charge of another who is helpless adequately to aid or protect himself" and that actor fails "to exercise reasonable care to secure the safety of the other while within the actor's charge." See Sabia, 164 Vt. at 304-05 (citing Restatement (Second) of Torts § 324).

    The Congregation and Watchtower point to Berry, in which reliance by the family of an abused minor on the "elders of the congregation for moral, spiritual, and practical guidance" did not give rise to a duty to protect. 879 A.2d at 1129. Lewis alleges she was "entrusted to the care of the Church by [her] parents" and the Congregation's voluntary acceptance of the entrusted care of Lewis gave rise to a "special duty of care." (Compl. ¶ 73.) The Complaint, however, does not assert True molested Lewis while she was under the care of the Congregation; rather, it asserts True molested her on his property while babysitting her. (Id. ¶ 49.) It is not clear from the Complaint that the Congregation or Watchtower had any involvement in this babysitting arrangement apart from the fact both True and Plaintiff's family were involved with the Jehovah's Witness Church.

In response to the Motion to Dismiss, Lewis asserts she will move to amend her Complaint to allege the Jehovah's Witness Church has a policy and practice of monitoring congregation members accused of molestation rather than informing congregation members. (Doc. 13, at 13.) Lewis argues this process amounts to a voluntary undertaking of an obligation to protect another from harm. See id.; see also Sabia, 164 Vt. at 302, 669 A.2d at 1193-94 ("[B]y voluntarily undertaking to protect an abused child from a danger it played no part in creating, the social services agency may well have 'acquired a duty under state tort law to provide him with adequate protection against that danger.'") (quoting DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 201-02 (1989)).

To state a claim for negligence based on a "duty to protect," Lewis must show the Congregation voluntarily assumed an obligation to protect her in particular from True. See Sabia, 164 Vt. 293, 669 A.2d 1187. At this time, to the extent Lewis's negligence claim depends on the existence of a duty to protect, it is dismissed without prejudice.

### 4.    Duty to Warn Lewis

Lewis alleges the Congregation had a duty to warn Lewis of True's dangerous propensities. (Compl. ¶ 78.)

Lewis alleges the Supreme Court of Vermont recognized a duty to warn independent of the duty to protect in Sorge v. State, 171 Vt. 171, 762 A.2d 816 (2000). The court in Sorge distinguished between "a breach of duty of care based on the State's failure to control the actions of the juvenile" and a breach of duty of care "by failing to warn plaintiff . . . that he was at risk of being harmed." Id. at 175. The Sorge court did not describe the content of a duty to warn or distinguish a duty to warn from a duty to protect. Lewis asks the Court to find a duty to warn Lewis independent of a duty to protect her or a fiduciary duty. (Doc. 13, at 7-9.) In Langle v. Kurkul, 146 Vt. 513 (1986),

the Vermont Supreme Court outlined several factors for a court to review to find the existence of a

duty:

> [T]he degree of certainty that the plaintiff suffered injury, the
> closeness of the connection between the defendant's conduct and the
> injury suffered, the moral blame attached to the defendant's conduct,
> the policy of preventing future harm, the extent of the burden to the
> defendant and consequences to the community of imposing a duty to
> exercise care with resulting liability for breach, and the availability,
> cost, and prevalence of insurance for the risk involved.

Id. at 519.  Lewis argues these factors support finding a church has a duty to warn congregants of

known child abusers.

In its reply, the Congregation points out the court in Langle declined to recognize a new

duty and did not identify any new "special relationship" giving rise to a duty.  (Doc. 14, at 3 n.4.)

Furthermore, Sorge does not describe a duty to warn, only a duty to control.  In the absence of

precedent in Vermont[2] or within the Second Circuit for a church's "duty to warn" its congregants,

the Court finds no "duty to warn" distinct from a duty to protect exists in the context of

institutional sex abuse cases.  Accordingly, to the extent Lewis's negligence claim depends on the

existence of a distinct duty to warn, it is dismissed with prejudice.

D.    Ratification (Count III)

Lewis alleges Bellows Falls Congregation and Watchtower "are responsible as a matter of

law for the acts of sexual battery by Defendant True through their ratification of Defendant True's

---

[2] A mental health professional does have a "duty to warn" an identified or identifiable third party that a patient poses a risk of physical harm, but this duty is not distinct from a "duty to protect."  See Barrett v. Prison Health Servs., Inc., No. 5:08-cv-203, 2010 WL 2837010, at *5 (D. Vt. July 19, 2010) (treating a duty to warn as a subset of the duty to protect as set out in Peck v. Counseling Serv. of Addison Cnty., Inc., 146 Vt. 61, 499 A.2d 422 (1985), which adopted the Restatement (Second) of Torts § 315).  To establish a duty to warn under this specific construction, Lewis would have had to allege a special relationship between the Congregation and True amounting to "in practice . . . the equivalent of a mental health professional" interacting with a patient.  Id. at *6 (emphasis in original).  She does not allege that relationship.

conduct." (Id. ¶ 87.) The claim is the Congregation and Watchtower facilitated True's wrongdoing by concealing it. (Id. ¶ 87.)

Citing the Restatement (Third) of Agency § 4.01, Lewis asserts ratification is "the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Id. Lewis explains under this theory, "[a]n employer may ratify the unauthorized act of its employee, i.e., an act not within the scope of the employment, and thereby become obligated to the same extent as if the principal had originally authorized the act." DeBose By & Through DeBose v. Bear Valley Church of Christ, 890 P.2d 214, 230 (Colo. App. 1994), rev'd on other grounds, 928 P.2d 1315 (Colo. 1996).

Lewis admits the Supreme Court of Vermont has never passed on whether this theory of ratification is available to a plaintiff in Vermont. (Doc. 13, at 14 n.5.) Lewis would have the Court look to the law of other states for guidance. (Id.) Because, however, the Vermont Supreme Court has not recognized a claim for ratification, the Court declines to find such a claim. See Maska U.S., Inc. v. Kansa Gen. Ins. Co., 198 F.3d 74, 80 (2d Cir. 1999) ("[I]n a diversity case the federal courts are not free to develop their own notions of what should be required by the public policy of the state, but are bound to apply the state law as to these requirements.") (citation omitted); D'Andrea v. Rafla-Demetrious, 146 F.3d 63, 66 (2d Cir. 1998) (declining to adopt a section of the Restatement of Torts as law where state courts had not done so). Accordingly, Count III, Lewis's ratification claim, is dismissed with prejudice.

    E.    Fraud By Omission/Concealment (Count IV)

Lewis alleges True was an agent of the Congregation and Watchtower, and consequently they owed a duty of aid and protection to Lewis, who they invited to participate in the church where True worked. (Compl. ¶¶ 90-93.) Lewis asserts the Congregation and Watchtower had a duty to

disclose previous allegations of child molestation against True that arose from their duty of aid and protection to Lewis. (Id. ¶ 95.)

"Fraudulent misrepresentation can be accomplished affirmatively by false statement or by the concealment of facts by one who has a duty to disclose those facts." Estate of Alden v. Dee, 190 Vt. 401, 415, 35 A.3d 950, 961 (2011) (citation omitted). "The duty to disclose arises out of a special relationship of confidence or trust -- such as the fiduciary relationship between trustee and beneficiary." Id. The tort of fraud by negative deceit traditionally applies to transactions where the parties wield asymmetric information. See Sutfin v. Southworth, 149 Vt. 67, 70, 539 A.2d 986, 988 (1987) (describing fraud by omission as "liability for failure to disclose facts material to the transaction").

Like Lewis's claim for breach of fiduciary duty, her fraud by omission claim depends on the existence of a fiduciary duty or similar relationship of confidence or trust. Because Lewis, at this time, has failed to allege adequate facts to support the existence of such a relationship, her claim for fraudulent omission is dismissed without prejudice.

F.    Statute of Limitations

If the statute of limitations bars Lewis's claim, she cannot show an entitlement to relief and the Complaint must be dismissed. Brown v. Castleton State Coll., 663 F. Supp. 2d 392, 396 (D. Vt. 2009). Vermont has a six-year statute of limitations for actions based on "childhood sexual abuse," running from either the date "of the act alleged to have caused the injury or condition" or "the time the victim discovered that the injury or condition was caused by that act." 12 V.S.A. § 522(a). The statute of limitations is tolled during the time a plaintiff is a minor. 12 V.S.A. § 551. The Congregation and Watchtower assert upon information and belief Lewis is now twenty-seven years old. (Doc. 11, at 2.) If this is correct, Lewis has not been a minor for approximately nine years.

14

Lewis does not refer to specific dates she sustained or discovered her injuries in her Complaint and does not allege how she discovered her injuries. She merely alleges "[w]ithin the six years predating the filing of this complaint, [she] discovered that the injuries and conditions as to which she complains herein were caused by the childhood sexual abuse set out in the Complaint." (Compl. ¶ 2.)

True moves to dismiss the Complaint based on the expiration of the statute of limitations, contending Lewis's sole allegation relating to the statute of limitations -- that she discovered during the past six years her injuries were caused by the alleged sexual abuse -- is conclusory and cannot state a claim. (Doc. 13.) Dismissal, however, "is not appropriate when a plaintiff may prevail on the merits of a claim after a further exposition of the facts." Precise Mktg. Corp. v. Simpson Paper Co., No. 95-cv-5629, 1996 WL 285364, at *2 (S.D.N.Y. May 30, 1996) ("Although dismissing Plaintiff's Complaint might ultimately provide Defendant with the information necessary to frame a responsive pleading, dismissal is not the proper procedure by which to compel a plaintiff to clarify his pleading."); see also Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010) (finding a more definite statement under Rule 12(e) preferable to a motion to dismiss "when a specific date could support a dispositive defense motion").

The Congregation, Watchtower, and True argue if the motion to dismiss is denied, a motion for a more definite statement regarding the statute of limitations should be granted. Fed. R. Civ. P. 12(e) provides "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Though generally disfavored, "where the movant shows that there actually is a substantial threshold question that may be dispositive, such as a critical date, a more definite statement may be warranted." In re Fosamax Prods. Liab. Litig., No. 06-MD-1789,

15

2013 WL 6669706, at *2 (S.D.N.Y. Dec. 18, 2013) (quotations omitted) (citing 5C Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1376, at 336 (3d ed. 2004)).  Accordingly, some courts have granted a motion for a more definite statement as to specific dates of alleged conduct.  See, e.g., Buchholtz v. Renard, 188 F. Supp. 888, 892 (S.D.N.Y. 1960) (granting a motion for a more definite statement as to dates when plaintiffs received delivery of stock to provide basis for defendants' statute of limitations defense).

The general weight of authority, however, cuts against granting Defendants' motions for a more definite statement, as "Rule 12(e) is designed to strike at unintelligibility rather than want of detail," 2A Moore's Fed. Prac. § 12.18 (2d ed. 1979), and dates are "properly sought through discovery."  Mut. Indus., Inc. v. Am. Int'l Indus., No. 11-cv-5007, 2011 WL 4836195, at *3 (E.D. Pa. Oct. 11, 2011); see also Renteria v. Nationwide Credit, Inc., No. 09-cv-1195, 2009 WL 2754988, at *2 (S.D. Cal. Aug. 27, 2009) (where a defendant seeks dates as a basis for dismissal under a statute of limitations, "[d]efendant's recourse is to conduct discovery on the matter and bring a motion for summary judgment if it turns out that [p]laintiff's claims are time-barred"); Steinberg v. Guardian Life Ins. Co. of Am., 486 F. Supp. 122, 123 (E.D. Pa. 1980) (where the complaint is "not so vague or ambiguous that the defendant cannot frame a responsive pleading," "[a]dditional information may be obtained from the discovery procedures").

Accordingly, Defendants' motions for a more definite statement are denied.  If discovery yields facts supporting a statute of limitations defense, the Defendants will have the opportunity to raise that defense on summary judgment.

IV.    Conclusion

For the reasons discussed above, the Congregation and Watchtower's Motion to Dismiss (Doc. 11) is GRANTED IN PART and DENIED IN PART.  Count I, Plaintiff's claim for breach

of fiduciary duty, is dismissed without prejudice.  Count II, Plaintiff's claim for negligence, is dismissed with prejudice to the extent it depends upon a "duty to control" or a "duty to warn," and dismissed without prejudice to the extent it depends upon a "duty to protect."  The Motion to Dismiss is denied as to the negligence claim to the extent that claim depends upon a "duty to supervise."  Count III, Plaintiff's ratification claim, is dismissed with prejudice.  Count IV, Plaintiff's fraud by omission claim, is dismissed without prejudice.

The Congregation and Watchtower's Motion for a More Definite Statement (Doc. 11) is DENIED.

True's Motion to Dismiss and For a More Definite Statement (Doc. 12) is DENIED.

Plaintiff may move to amend her Complaint by April 24, 2015.  Any motions to dismiss must be filed by the Defendants within 30 days of the filing of an Amended Complaint.  Plaintiff's response shall be filed within 30 days of a motion to dismiss, and Defendants' replies shall be filed within 15 days of the response.

The parties shall file a proposed Stipulated Discovery Schedule on or before April 24, 2015. See D. Vt. L.R. 26(a).

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 25th day of March, 2015.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge

17